**UNITED STATES of America,**
**Plaintiff/Appellee,**

v.

**Laurence John LAYTON,**
**Defendant/Appellant.**

**No. 81–1111.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 9, 1981.

Decided May 5, 1981.

James F. Hewitt, Federal Public Defender, San Francisco, Cal., for defendant-appellant.

Sanford Svetcov, Asst. U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before WALLACE, FLETCHER and NORRIS, Circuit Judges.

NORRIS, Circuit Judge:

Layton appeals the District Court's order, 509 F.Supp. 212 (N.D.Cal.1981), denying his motion to dismiss the indictment for lack of subject matter jurisdiction. We dismiss the appeal for lack of a final judgment within the meaning of 28 U.S.C. § 1291.

## I.

On October 9, 1980, Layton was indicted by a federal grand jury in the Northern District of California. The indictment contained four counts: (1) conspiracy to murder a United States Congressman in violation of 18 U.S.C. § 351(d); (2) aiding and abetting the murder of a Congressman in violation of 18 U.S.C. § 351(a); (3) conspiracy to murder an internationally protected person in violation of 18 U.S.C. § 1117; and (4) aiding and abetting the attempted murder of an internationally protected person in violation of 18 U.S.C. § 1116(a). The charges arise from events which occurred at the Port Kaituma, Guyana airport on November 18, 1978. Those events resulted in the death of Leo J. Ryan, the United States Congressman from the 11th Congressional District of California, and the wounding of Richard Dwyer, the Deputy Chief of Mission for the United States in the Republic of Guyana. Layton was in custody in Guyana at the time the indictment was returned.

Layton's motion to dismiss the indictment for lack of subject matter jurisdiction was based on his contentions that § 351 has no extraterritorial effect and that §§ 1116 and 1117 require that a defendant be physically within the United States when indicted.

## II.

Before we can reach the questions of statutory interpretation, we must address the threshold question whether the denial of a motion to dismiss for lack of subject matter jurisdiction is appealable prior to final judgment.

■ The right of appeal in criminal cases "is purely a creature of statute." *Abney v. United States*, 431 U.S. 651, 656, 97 S.Ct. 2034, 2038, 52 L.Ed.2d 651 (1977). Interlocutory appeals are not favored in our judicial system. 28 U.S.C. § 1291 provides that "[t]he courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States." In *Abney, supra*, the Supreme Court emphasized that "[a]dherence to this rule of finality has been particularly stringent in criminal prosecutions because 'the delays and disruptions attendant upon intermediate appeal,' which the rule is designed to avoid, 'are especially inimical to the effective and fair administration of the criminal law.'" 431 U.S. at 657, 97 S.Ct. at 2039, *quoting DiBella v. United States*, 369 U.S. 121, 126, 82 S.Ct. 654, 658, 7 L.Ed.2d 614 (1962).

■ "The ease with which the finality rule is stated, however, belies the difficulty of its application." *United States v. Garner*, 632 F.2d 758, 761 (9th Cir. 1980), *cert. denied*, — U.S. —, 101 S.Ct. 1373, 67 L.Ed.2d 351 (1981). In *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), the Supreme Court created an exception to the general rule of finality, for certain "collateral orders." In *Cohen*, the Court acknowledged a "small class [of decisions] which finally determine claims of right separable from, and collateral to, rights asserted in the action,

too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.* at 546, 69 S.Ct. at 1225–26. The Court established a three part test for determining whether a pre-trial order is immediately appealable. First, there must be a complete, formal and final rejection of the party's claim in the trial court. In no sense may the matter be left "open, unfinished or inconclusive." *Id.* Second, the claim must be wholly collateral to, and separable from, the principal issue in the case. *Id.* In a criminal trial the principal issue, of course, is the guilt or innocence of the defendant. *Abney,* 431 U.S. at 659, 97 S.Ct. at 2040. Finally, the claim must be grounded on a right which will be "lost, probably irreparably" if interlocutory appeal is not permitted. *Cohen,* 337 U.S. 546, 69 S.Ct. 1225. Thus in a criminal case, the defendant's claim must be grounded in a "right to be free from prosecution itself, rather than merely the right to be free from a subsequent conviction." *United States v. Griffin,* 617 F.2d 1342, 1345–46 (9th Cir.), *cert. denied,* —— U.S. ——, 101 S.Ct. 167, 66 L.Ed.2d 80 (1980).

Such a challenge to "the very authority of the prosecution to hale the defendant into court in the first place," *Griffin,* 617 F.2d at 1346, has been the basis of each of the claims in the criminal context which have been held by the Supreme Court or this court to be immediately appealable under *Cohen. See Abney,* 431 U.S. at 662, 97 S.Ct. at 2041 (double jeopardy); *Helstoski v. Meanor,* 442 U.S. 500, 508, 99 S.Ct. 2445, 2449, 61 L.Ed.2d 30 (1979) (Speech or Debate Clause); *Griffin,* 617 F.2d at 1345 (vindictive prosecution); *United States v. Yellow Freight System, Inc.,* 637 F.2d 1248 (9th Cir. 1980) (Indictment Clause); *United States v. Wilson,* 639 F.2d 500 (9th Cir. 1981) (selective prosecution).

■ We need not determine whether Layton's challenge to the subject matter jurisdiction of the trial court satisfies the first two prongs of the *Cohen* test, for it clearly fails to satisfy the third require-

ment. Unlike the protection afforded by the Double Jeopardy Clause, the Indictment Clause, the Speech or Debate Clause, and the prohibitions of vindictive or selective prosecution, the requirement that a federal court have subject matter jurisdiction "does not ... encompass a 'right not to be tried' which must be upheld prior to trial if it is to be enjoyed at all." *United States v. Mac-Donald,* 435 U.S. 850, 861, 98 S.Ct. 1547, 1553, 56 L.Ed.2d 18 (1978).

Although we know of no case decided after *Abney* that has directly presented the issue, we think that the case law supports our conclusion that a challenge to subject matter jurisdiction is not appealable before trial. A motion to dismiss for lack of personal jurisdiction is a much more attractive candidate for interlocutory appeal. Pre-trial appeal of challenges to personal jurisdiction, however, have been rejected, even in the criminal context. *See United States v. Sorren,* 605 F.2d 1211, 1213–15 (1st Cir. 1979). It follows *a fortiori* from *Sorren* that interlocutory appeal of a subject matter jurisdiction challenge also should not be permitted. The *Sorren* court, in fact, reached this conclusion, albeit in dicta. 605 F.2d at 1214. *See also Hydraulic Press Mfg. Co. v. Moore,* 185 F.2d 800 (8th Cir. 1950) (challenge to personal jurisdiction not appealable before trial in civil case); *In re Durensky,* 519 F.2d 1024, 1028–1030 (5th Cir. 1975) (challenge to subject matter jurisdiction not appealable before trial in civil case); *Atlantic Fishermen's Union v. United States,* 197 F.2d 519 (1st Cir. 1952) (per curiam) (challenge to subject matter jurisdiction not appealable before trial in criminal case).

The Supreme Court's discussion of the subject matter jurisdiction of federal courts confirms that the requirement of such jurisdiction does not confer upon litigants a right to be free from trial itself. Rather, the Court's concern has been with protecting the judicial system—and thus only indirectly the litigants—from the institutional consequences of permitting to stand *the judgment* of a court which lacks jurisdiction. *See American Fire & Casualty Co. v.*

*Finn*, 341 U.S. 6, 18, 71 S.Ct. 534, 542, 95 L.Ed. 702 (1951) ("To permit a federal trial court *to enter a judgment* ... where the court could not have [subject matter] jurisdiction ... would ... give district courts power the congress has denied them") (emphasis added).

Although we do not reach today the merits of Layton's challenge to the jurisdiction of the district court, we observe that his argument undercuts, to an extent, his claim that the denial of his motion to dismiss for lack of subject matter jurisdiction should be immediately appealable. Layton concedes that a grant of jurisdiction over the alleged acts would be constitutional under Article III, even though they were committed in a foreign country. His contention is that Congress, although it could confer such extraterritorial jurisdiction on the federal courts, has not done so in the statutes in question. This alleged failure by Congress to extend jurisdiction, rather than being based on some concern that persons accused of such acts should be spared the ordeal of trial in the federal courts of this country, is based, he suggests, on a reluctance to make a "significant intrusion on the delicate issues of foreign relations" which are involved in such an extraterritorial grant. This belies any contention that limitations on the federal courts' subject matter jurisdiction involve a right to be free not merely from conviction, but from prosecution itself. The interest in protecting intergovernmental relations does not require that jurisdictional questions be finally resolved prior to trial. Rather, it is adequately served by ensuring, through postjudgment appeal, that federal courts not enter final judgments in cases not within their subject matter jurisdiction.

In sum, we agree with the 1st Circuit's conclusion in *Sorren, supra*, that "the essence of a litigant's jurisdictional 'right' is that the court not impose a *judgment* against him unless it has ... subject matter jurisdiction." 605 U.S. at 1214 (emphasis in original). That "right" can be fully vindicated by postjudgment appeal. Thus a challenge to a trial court's subject matter jurisdiction fails to satisfy the third prong of the *Cohen* test. To permit an interlocutory appeal under these circumstances "would bring about a disruption of the efficiency of the criminal justice system that we are unwilling to countenance." *Garner*, 632 F.2d at 766.

The appeal is DISMISSED. The mandate shall issue forthwith.